BENJAMIN F. ROBEY, SHERIFF, ET AL. *vs.* THE STATE OF MARYLAND, USE OF ALLEN W. MALLERY ET AL.

*When the Sheriff May Demand Bond of Indemnity Before Selling Property Under an Execution—Action on Sheriff's Bond—Pleading—Prayers—Agreed Statement of Facts—Plea of Defense on Equitable Grounds.*

When a sheriff in executing a writ of *fieri facias* is notified that the property upon which he levied does not belong to the defendant in the execution but is claimed by another, he is entitled to demand a bond of indemnity from the plaintiff before proceeding to sell, provided he acts in good faith in making the demand for indemnity and there is some substantial reason for it.

If the demand for a bond of indemnity be then refused the sheriff should make a return to the Court setting forth the cause of his delay in the execution of the writ.

In an action against a sheriff and the surety on his official bond, the breach assigned in the declaration was the neglect of the sheriff to sell certain property levied on by him under an execution and his neglect to make return thereof to the Court. One of the defendant's pleas set up that a claim was made that the property levied on did not belong to the defendant in the execution ; that the sheriff honestly believing this claim to be well founded demanded that plaintiff protect him by a bond of indemnity, or satisfy him by competent legal advice that he could lawfully sell said property before making a sale, but that the plaintiff had failed to do either   A replication to this plea admitted that a bond of indemnity had not been given, but set forth that the plaintiff did give to the sheriff legal advice that the claim made to the property was unfounded and that the sheriff had no right under the circumstances of the case to demand indemnity. *Held*, that a demurrer to this replication should have been sustained, since it is argumentative and indefinite.

A prayer asking the Court to rule as law that the verdict should be for the defendant on the agreed statement of facts filed is too general and indefinite.

An agreed statement of facts filed in a case does nothing more than take the place of evidence offered in the usual way, and does not authorize judgment to be entered for the party entitled, as may be done under a case stated.

It is not allowable to plead general performance to a declaration assigning breaches of the condition of the bond sued upon.

Code, Art. 75, secs. 83, &c.. was designed to permit a defendant to plead defenses valid in equity but not previously available at law. But that which is a good defence at law must be pleaded as such and not as a plea upon equitable grounds.

Appeal from the Circuit Court for Prince George's County (MERRICK, J.)

The cause was argued before McSHERRY. C. J., FOWLER, BRISCOE, BOYD and SCHMUCKER, JJ.

*Joseph K. Roberts* (with whom was *Chas. H. Stanley* on the brief), for the appellants.

*Marion Duckett* and *John B. Contee* (with whom was *E. Dent* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This is a suit upon the official bond of a former Sheriff of

Prince George's County.   The facts upon which the questions presented by the record arise are as follows : On the first of May, eighteen hundred and ninety-nine, a writ of *fieri facias* was issued out of this Court and directed to the Sheriff of Prince George's County commanding him that of the goods and chattels, lands and tenements of Jemima C. Quynn and others, he cause to be made the sum of three hundred dollars and fifty-five cents, costs adjudged by this Court to be recovered by Allen W. Mallery and others against the said Jemima C. Quynn and others in a cause then lately depending in this Court.   In execution of that writ the sheriff on May the sixteenth and seventeenth, levied upon what is stated in his return to have been Mrs. Quynn's estimated share or interest in certain tobacco crops, then in five different barns which were in the possession of other persons, possibly tenants of Mrs. Quynn ; and on June the seventeeth, he also levied on two horses, a carriage and harness.   When these levies were made the sheriff was notified by Mrs. Quynn that the property seized by him did not belong to her in her own right, but that she held it as trustee under the will of her late husband in trust for herself and her children.   She warned the sheriff that if he removed or sold the property she would sue him and the surety on his bond.   Thereupon the sheriff notified the counsel of Mallery of the claim and the threats of Mrs. Quynn, and not desiring to incur the costs and expenses of a litigation demanded from the counsel of Mallery a bond of indemnity to protect himself against loss in the event of his being sued for executing the writ.   The counsel of Mallery refused to give a bond of indemnity, but assured the sheriff that the claim of Mrs. Quynn was unfounded.   The sheriff then made return to the Circuit Court for Prince George's County, to which Court the writ of *fieri facias* was returnable, that he had levied as per schedule appended, but had " not sold for want of indemnifying bond.   Said bond having been asked for of John B. Contee, attorney, and not given."   Nothing further seems to have been done until October the twenty-sixth upon which day Mallery by his counsel filed a petition in the Circuit Court,

and after setting forth a statement as to the issuance of the writ, the levy thereunder and the demand of a bond of indemnity, he averred that the demand of the sheriff for a bond of indemnity was frivolous and without just reason, right or cause; and he then took issue with the sheriff as to the latter's right to demand such indemnity under the facts and circumstances and upon the grounds relied on by the sheriff. The petition concluded with a prayer that a copy of the petition might be served on the sheriff and Mrs. Quynn, and that an order might be passed setting "the matter" down for hearing on the—— day of——1899. Upon the petition an order was passed directing "that the matter herein involved of the sheriff's right to demand of the plaintiffs an indemnity bond before selling the property returned levied upon by him in this cause, be set for hearing on the 31st of October, 1899," provided a copy of the petition and order were served upon the sheriff and the defendants three days prior to the above named date. The sheriff admitted service of the order, but the order was not served upon Mrs. Quynn. On October the thirty-first the sheriff answered the petition by filing a copy of the return he had previously made and which has already been alluded to. Nothing further was done by either party, and the matter seems to have dropped. The answer of the sheriff was not excepted to as insufficient, it was not traversed and no evidence was adduced to show that the averments of the petition were well founded. On May the thirty-first, nineteen hundred, this suit was brought against the sheriff and the surety on his official bond. The breach of the condition of the bond assigned in the declaration is the neglect of the sheriff to sell the property levied on by him and his neglect " to make return thereof to the Court." To this declaration the defendants pleaded three pleas. The first was performance. The second was in confession and avoidance. It admitted the issuance of the writ, the levy thereunder and the failure to sell, but set up the claim made by Mrs. Quynn that she did not own in her own right the property levied on, but held it in trust under the will of her late husband. The plea asserted the willingness of the

sheriff to make the sale upon being indemnified and protected
either by a bond of indemnity or upon being satisfied by com-
petent legal advice that he could lawfully seize upon, take, sell
or dispose of the property in satisfaction of the execution.   The
plea further stated that the sheriff had requested the plaintiff to
protect and indemnify him and it averred that the plaintiff "failed
and absolutely refused to indemnify, agree to protect or sat-
isfy " the sheriff in the performance of his duty and asserted
that the plaintiff insisted that the sheriff should, at the risk of
himself and his surety, proceed to sell the property levied on,
" but the said defendant, Benjamin F. Robey, honestly believ-
ing that the said property was not the property of either of
said defendants in the execution did not sell the same, but de-
siring to protect the plaintiffs   *   *   *   *   returned said
execution, showing the levy or schedule of said property."
The third plea presents precisely the same facts by way of
equitable defense.   Issue was joined on the first plea and a
replication was filed to the second and third pleas.

It is quite difficult to determine precisely what this replica-
tion is.   It begins by admitting distinctly and in terms the
allegations of the pleas and then proceeds to deny what had
been admitted, instead of being confined to a traverse of the
traversable allegations of the pleas.   The replication admits
that a bond of indemnity had been demanded and had not been
furnished, but it denies that the plaintiff " did not give the
said sheriff the other alternative of his demand, to wit : the
advice of a competent attorney that he could take and sell said
property so levied upon.   On the contrary the plaintiffs aver
they informed the sheriff what he well knew without the advice
by the said John B. Contee and Marion Duckett, Esqrs., of
this bar, that Mrs. Quynn's claim of title and threats of suit as
above set out in defendant's pleas were *predicted* upon title in
herself as trustee under the will of John Bowling, deceased,
and that however futile her claim of title as trustee for her
children might be, the fact was and is that the property so
levied upon and scheduled in said pleas was never covered by
said will, was never the testator's property, but on the con-

trary was the sole and exclusive property of Jemima C. Quynn which she acquired from her father in her own right and in fee-simple * * * * and that said property could have been and should have been seized and sold under said writ ; " and that the sheriff had no right to demand a bond of indemnity " and a bond for seizure and sale of such property, trust property which was demanded by the sheriff in the language of the claim and threats of Mrs. Quynn would have been nugatory and idle." This replication was demurred to. The demurrer was overruled and then a rejoinder was filed and issue was subsequently joined. The case was submitted to the Court upon an agreed statement of facts, but not upon a case stated. A prayer was presented by the defendants asking the Court to rule as law that the verdict should be for the defendants. This prayer was rejected and an exception was taken. Judgment was entered in favor of the plaintiffs for the penalty of the bond to be released on payment of the sum for which the *fieri facias* had been issued. From that judgment this appeal was taken.

We have been compelled to set out the pleadings with more than ordinary detail, because of their peculiarity. There are strictly speaking two questions on the record and they are, first, whether the trial Court was right in overruling the demurrer to the replication, and, secondly, whether the ruling by which the defendant's prayer was rejected was correct. Neither of these questions distinctly or directly presents the proposition which was discussed at the bar ; but as that proposition underlies the whole case and must ultimately be disposed of, it will be dealt with in considering the sufficiency of the defendant's pleas, because it will incidentally arise in that way. The sufficiency of those pleas may be examined under the demurrer to the plaintiff's replication. If the pleas are bad and present no defense there would be no reversible error in the ruling on the demurrer to the replication even though that ruling were wrong, because the demurrer would mount to the first error in the pleading and would justify a judgment against the party committing that error.

The replication to the second and third pleas was manifestly bad.   It was argumentative and indefinite.   If the plaintiffs disputed the legal sufficiency of the pleas they should have demurred to them.   If they denied the facts relied on in the pleas in avoidance of the breaches set forth in the declaration they should have traversed them.

The pleas alleged that Mrs. Quynn claimed that the property levied on was not hers and that the sheriff honestly believed her claim to be valid and that he thereupon demanded a bond of indemnity or to be satisfied by competent legal advice that he could safely make sale of the property ; and that no bond was given and the plaintiffs did not satisfy the sheriff of his right to make the sale.   The replication does not flatly meet these averments except by admitting that the plaintiffs refused to give the bond of indemnity, but it undertakes to deny the other allegations in an indirect and an argumentative way and concludes by asserting that the pleas do not aver performance by the sheriff of his official duty when in fact they were intended to show, not a performance, but an excuse for not performing his duty to execute the writ.   The honesty of the sheriff's belief is not traversed except inferentially, though that averment was a material element to the validity of the defense made by the pleas.   There was consequently error in overruling the demurrer to the replication.

There was no error in rejecting the prayer set out in the first exception.   The prayer is in these words :  " The defendants pray the Court to rule as law that the verdict should be for the defendants on the agreed statement of facts filed and *fi. fa.* and return of the sheriff offered."   Apart from the fact that the bill of exceptions does not incorporate the statement of facts either by express or inferential reference and therefore does not permit that statement to be looked to in dealing with the prayer, the prayer could not have been granted in any event.   It does not raise a distinct legal question.   It is too general and indefinite and had it been granted there would have been no possible way to determine upon what theory it was founded.   There is a broad difference between a prayer

which is a demurrer to the evidence and a prayer which is defective, because too general. · This difference has often been pointed ·out. *West. Md. R. R. Co.* v. *Carter,* 59 Md. 306; *Shipley·& Wampler* v. *Shilling,* 66 Md. 558; *Hobbs* v. *Batory,* 86 Md. 68. In the case last cited a prayer in almost the precise words of that now under review was held to be too gen-´ eral and·therefore defective.

  ·  The substantial proposition involved in the case and the one discussed at the argument has not been directly raised. The rejected prayer was framed to present it, but failed to do so, because of its structural defect. Incidentally the proposition is encountered in another way. Upon looking to the demurrer filed to the replication it becomes· our duty to search for the first error in pleading as, upon settled principles, the demurrer will mount to that error. The application of that rule requires that each of the pleadings preceding the replication should be examined. We must consequently inspect the pleas to ascertain whether they present a good defense if the facts averred in them are true. In making that inspection we meet the precise proposition which underlies the case, and it is this : Has a sheriff, under the circumstances here presented, the lawful right to demand a bond of indemnity before proceeding to execute a writ of *fieri facias?*

  In England whenever the property in the goods levied on under a *fieri facias* was disputed, which frequently happened on a commission in bankruptcy and otherwise, the Court, on the suggestion of a reasonable doubt, would protect the sheriff, by enlarging the time for making his return till the right could be tried between the contending parties, or till one of them would give the sheriff a sufficient indemnity. The rule for this purpose was a rule to show cause. 2 *Tidd's Prac.,* 1017; *Ledbury* v. *Smith,* 1 Chitty, Rep. 294; *Burr* v. *Fresthy,* 1 Bing. 71; *Bernasconi et al.* v. *Fairbrother & Winchester,* 7 Bar. & Cres. 379. In the last cited case Lord Tenterden, C. J., said : " The Court will give the sheriff all the protection due to a public officer when he acts *bona fide* within the scope of his duty ; and, as between. the sheriff a judgment creditor and the

assignee of a bankrupt, it will always take care that the sheriff shall not be made an instrument of trying at his own expense the validity of a commission." When property levied on is claimed by another, " the proper course," says Mr. Evans, " is for the sheriff to do nothing, but apply to the Court to give him time to return the writ, until one or the other party consents to give a proper indemnity bond." *Evans Pr.*, (1st ed. 369.) And Mr. Poe in his admirable work on *Pleading and Practice*, states that when the goods which the sheriff had been instructed to seize are claimed by a third party " who threatens so sue him if he seizes them, he may very properly refuse to proceed further until the question of ownership is determined, or until he is indemnified against all damages to which he may become liable by executing the writ. If the plaintiff refuses thus to indemnify him, he should make a return to the Court, setting out the facts fully and asking to have the time enlarged for the execution of the writ until indemnity is given." *Poe, Practice*, sec. 683. As early as the case of *Jessup* v. *Brown,* 2 G. & J. 404, decided in eighteen hundred and thirty, this Court recognized the right of the sheriff to demand a bond of indemnity when the ownership of the property levied on was disputed ; and in that case the time for returning the writ of *fieri facias* was extended so that the bond might be furnished, though the Court declined to lay down any general rule on the subject. In *Marsh* v. *Gold,* 2 Pick. 289, C. J. Parker stated that "An officer called upon to serve a precept either by attaching property or arresting the person, if there be any reasonable grounds to doubt his authority to act in the particular case, has a right to ask for an indemnity. He is not obliged to serve process in civil actions at his own peril, when the plaintiff in the suit is present and may take the responsibility upon himself. And it has been decided that the sheriff has a right to require indemnity of the creditor, when he shall be directed to attach chattels, the property in which may be questionable. *Marshall* v. *Hosmer,* 4 Mass. 63." Numerous other cases, both American and English, might be cited in support of this doctrine but it is not deemed necessary to do so.

It may be considered as settled in this State that a sheriff when a third party confronts him with a claim of ownership to property levied on by him as the property of the defendant may if he honestly believes the claim to be well founded lawfully demand from the plaintiff a bond of indemnity before proceeding to sell, but he should make a return to the Court setting forth the circumstances which cause him to delay the execution of the writ. There must, of course, be some substantial reason for the demand of indemnity and the sheriff must act in good faith in making the demand. An arbitrary or capricious refusal to execute the writ unless indemnified would afford no justification for not executing it. If there is a reasonable doubt as to the ownership of the property levied on, the sheriff ought not to be required to solve that doubt at his own peril; but the judgment creditor should assume the risk and furnish an adequate indemnity. This is both reasonable and just and imposes no needless burden on the creditor.

The allegations of the second plea bring the course pursued by the sheriff clearly within the principle just stated, and if the facts as pleaded be true they furnish a complete defense to the suit. The case is not before us in such a way as to permit us to pass on the facts at all. The agreed statement of facts takes the place of evidence offered in the usual way and does nothing more—it stands for what could have been proved by oral or documentary evidence, and whether the facts thus stated sustain the plea is a question upon which we can pass no judgment. Nor can we determine, under the rejected prayer, whether there was any legally sufficient evidence to support the verdict. Had the cause been submitted on a case stated a different situation would have been presented. *Salfner* v. *State*, 84 Md. 299.

The first plea—the plea of general performance—was bad and should have been so ruled under the demurrer to the replication. A plea of general performance to a declaration assigning breaches of the condition of a bond is not allowable. *Shriver & Dwyer* v. *State, use of Reister*, 65 Md. 284. The

third plea was also bad and ought to have been so held on the demurrer to the replication. It undertook to rely by way of defense on " equitable grounds " upon identically the same facts depended on in the second plea to make out a legal defense. That cannot be done. The statute—*Code, Art. 75, secs. 83, 84, 85,*—which allows defenses on equitable grounds, was intended to permit a defendant to plead many defenses valid in equity, but not previously available at law. *Taylor* v. *State, &c.,* 73 Md. 222. A defense which is a good defense at law cannot be pleaded on equitable grounds, because it is only such a defense as could not formerly have been pleaded at law that is now let in on equitable grounds. As the second plea is a good plea at law it is obvious that the same facts cannot be set up as an equitable defense in the third plea.

Because of the error we have indicated, viz., the overruling of the demurrer to the replication, the judgment must be reversed and a new trial will be awarded.

*Judgment reversed, with costs above and below and new trial awarded.*

(Decided November 22nd, 1901.)